FILED

04/13/2017

Clerk of the
Appellate Courts


IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 12, 2017

**CASEY J. LAWSON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Smith County**
**Nos. 2012-CR-168, 2012-CR-214        Brody Kane, Judge**

_____

**No. M2016-00403-CCA-R3-PC**

_____

The Petitioner, Casey J. Lawson, pleaded guilty to unlawful possession of a weapon by a convicted felon and theft of property valued at $1,000 or more but less than $10,000. He timely filed a petition for post-conviction relief; following a hearing on the petition, the post-conviction court denied relief. On appeal, the Petitioner alleges that he received ineffective assistance of counsel because trial counsel's advice to plead guilty was deficient and because trial counsel failed to argue several pending motions before the Petitioner pled guilty. He also argues that his pleas were unknowing and involuntary because the State coerced him into pleading guilty by moving to revoke his bail and because trial counsel moved to withdraw from the representation. After a thorough review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT W. WEDEMEYER, J., joined.

Tillman W. Payne, III, Nashville, Tennessee, for the appellant, Casey J. Lawson.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Counsel; Tom P. Thompson, Jr., District Attorney General; and Howard Chambers, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Factual and Procedural Background**

On May 2, 2012, the Petitioner was arrested for disclosure of an indictment before arrest, and he posted bail in the amount of $1,000. On June 13, 2012, the Petitioner was

indicted in case number 2012-CR-168 for two counts of accessory after the fact, one count of unlawful possession of a weapon by a convicted felon, and one count of unlawful possession of a weapon. The Petitioner was arrested on a capias/bench warrant in case number 2012-CR-168 on June 14, 2012, and he posted bail the same day. On August 3, 2012, the Petitioner was indicted in case number 2012-CR-214 for theft of property valued at more than $1,000 but less than $10,000, which he was alleged to have committed on June 14, 2012. On August 6, 2012, the Petitioner was indicted in case number 2012-CR-186 for disclosure of an indictment before arrest.

On August 16, 2012, the State filed a Motion to Revoke Bond in case number 2012-CR-168 and case number 2012-CR-186, alleging that the theft offense in case number 2012-CR-214 occurred while he was released on bond. On November 21, 2012, the State filed a "Notice of Enhanced Punishment" listing two Class D felonies and four Class C felonies and claiming that the Petitioner was a career offender. Thereafter, on April 2, 2013, the Petitioner was indicted in case number 2013-CR-116 for possession of weapon by a convicted felon and was released on a recognizance bond. On April 12, 2013, the State filed a second Motion to Revoke Bond in case numbers 12-CR-166, 12-CR-168 and 12-CR-186, alleging that the Petitioner had been charged with Domestic Assault in Davidson County. On September 6, 2013, he was indicted in case number 2013-CR-199 for hindering a secured creditor. The Petitioner retained trial counsel to represent him on all cases except case number 2013-CR-199.

*Plea Submission Hearing*

The Petitioner's plea submission hearing was held on December 9, 2013. The State announced that the Petitioner would plead guilty to theft of property valued at more than $1,000 but less than $10,000 in case number 2012-CR-214 and unlawful possession of a weapon by a convicted felon in case number 2012-CR-168. After the State explained the terms of the plea agreement, the trial court asked the Petitioner a series of questions. In response, the Petitioner stated that he understood the terms of the plea agreement, including the fact that he was pleading guilty as a Range III persistent offender, and agreed that he had sufficient prior convictions to be a persistent offender. The Petitioner stated that he understood the amount of restitution he was agreeing to pay and the possible ramifications for failing to pay restitution. Trial counsel advised the trial court that he did not represent the Petitioner in case number 2013-CR-199, which was dismissed upon payment of restitution.

The State then provided a factual basis for the pleas. Concerning the unlawful possession of a weapon by a convicted felon count in case number 2012-CR-168, the State explained that a search warrant was executed at the Petitioner's residence where firearms were found and that the Petitioner was a convicted felon and disqualified from

possessing weapons even though his voting rights had been restored. Concerning the offense of theft of property valued at more than $1,000 but less than $10,000 in case number 2012-CR-214, the State asserted that the Petitioner offered a Mustang for sale on the internet, the victim agreed to purchase the Mustang, $8,500 was wired to the Petitioner's bank account, the victim never received the Mustang, and the vehicle was no longer in the Petitioner's possession. Concerning the hindering a secured creditor offense in case number 2013-CR-199, the State announced that the Petitioner obtained a loan to purchase a boat, no payments were made, and by the time the lender filed suit to repossess the boat, the Petitioner had disposed of it. The State noted that the charges in case number 2013-CR-199 would be dismissed and that payment of restitution would be a condition of probation in case number2012-CR-214.[1]

The trial court then conducted a thorough Tennessee Rule of Criminal Procedure 11(b) colloquy with the Petitioner,explaining the Petitioner's rights in detail. The trial court questioned the Petitioner about those rights. When asked whether "anybody promised [him] anything or threatened [him] to get [him] to plead guilty," the Petitioner responded "No, sir." The trial court then stated: "Mr. Lawson, I do believe there's a factual basis for each of your pleas. I think you understand the proceedings. I think you know what you're doing. I think your pleas are voluntary. I believe you're intelligent, so I'm going to accept them."

Pursuant to the terms of a plea agreement, the Petitioner received a ten-year suspended sentence as a Range III persistent offender for theft of property valued at more than $1,000 but less than $10,000 in case number 2012-CR-214 and a concurrent five-year suspended sentence as a Range III persistent offender for unlawful possession of a weapon by a convicted felon in case number 2012-CR-168. The Petitioner was required to pay restitution of $8,500 to Classic Car Liquidation by March 1, 2014, in case number 2012-CR-214. He was also ordered to pay restitution of $11,418.03 to Town & Country Finance in case number 2013-CR-199 as a condition of his probation. Case number 2013-CR-199 and the remaining counts in all cases were dismissed.

*Post-Plea Motion*

On January 7, 2014, the Petitioner filed a pro se Motion to Withdraw Guilty Plea, claiming his attorney and the State's attorney "forced him into the plea deal" and that his attorney failed to satisfactorily defend him. On March 13, 2014, an Agreed Order which

---

[1] The Special Conditions section of the judgment for case number 2012-CR-214 states that "Balance of restitution $11,418.03 is from case # [20]13-CR-199 and goes to Town & Country Finance …; Restitution must be paid as a condition of probation." The judgment in case number 2013-CR-199 has a check in the box before the "dismissed/nolle prosequi" and notes in the Special Conditions section that restitution is added to case number 2012-CR-214.

was approved by the State, a new attorney for the Petitioner, and the Petitioner was entered. The Agreed Order modified the "time of the payment of the $8,500" restitution and dismissed with prejudice the Petitioner's Motion to Withdraw Guilty Plea.

*Post-Conviction Proceedings*

The Petitioner timely filed a pro se petition for post-conviction relief in which he raised grounds of prosecutorial misconduct and ineffective assistance of counsel. He claimed that he was "forced into a plea deal" because he was coerced and because trial counsel failed to satisfactorily defend him. Following the appointment of counsel, the Petitioner filed an amended petition, claiming that his guilty pleas "were involuntarily entered due to the threats and coercion by [trial counsel]" and due to the deficient performance of trial counsel and requesting that the post-conviction court "set aside [the Petitioner's] guilty pleas and allow him to have a jury trial."

At the post-conviction hearing, the Petitioner testified that he hired trial counsel to represent him and that over a period of time they developed a type of strategy to defend the case that included filing several motions. The Petitioner said they were "good motions," but "they were never heard so I never really got my day in court because the due process was, to me, violated." The Petitioner claimed that he wanted the motions ruled on before he entered his plea because "[he] had an absolute defense for one charge" and "the other charge [he] felt was a civil matter." The Petitioner claimed that trial counsel told him that, if he did not take the plea offer, trial counsel would move to withdraw, that the State would go forward with its Motion to Revoke Bond, and that he would have to stay in jail without an attorney. The Petitioner identified a Motion to Revoke Bond based on new charges of domestic assault and another Motion to Revoke Bond that had been filed on August 16, 2012, approximately a year before he entered his plea. He explained that those motions were never argued. He said that the State insisted on taking the theft case to trial first because they felt that it was their strongest case. The Petitioner explained that he hired trial counsel to represent him on all cases except case number 2013-CR-199 in which he was charged with hindering a secured creditor because he could not afford to hire trial counsel on that charge. Regarding that offense, the Petitioner said that he borrowed money on a boat and that the creditor had a civil judgment for possession.

Concerning his claim that trial counsel coerced him into pleading guilty, the Petitioner stated:

> I felt that he would not give me my money back if I asked him for it back because I couldn't hire another attorney. He had already filed the motion to

withdraw. You know, that put fear in me. What am I going to do, because I thought I was hiring the best lawyer I could find.

…

I mean, we got along for the longest until the very end to where I was forced to plead guilty to something I wasn't guilty of, and that[']s just when it all went to crap. And when he filed the motion to withdraw, I was like, what do I do. I've got a DA over here filing a motion to put me in jail. I've got my attorney over here filing a motion to withdraw. I'm stuck to do whatever I had to do to stay free to take care of my family.

On cross examination, the Petitioner said that he had been a bondsman for a couple of years "in this court." The Petitioner admitted that the first Motion to Revoke Bond was filed after he was charged with theft in Sumner County and the second Motion to Revoke Bond was filed after he was charged with domestic assault in Davidson County. The Petitioner identified the enhancement notice alleging that he was a career offender, and he admitted that he had received a copy of the notice during the pendency of his charges. He stated that his rights had been restored but that he had not been pardoned. The Petitioner agreed that the State had scheduled a trial for the theft case involving the Mustang first.

Trial counsel testified that he had been practicing law since 1996 and that the majority of his practice had been criminal defense. He said that he was first contacted by the Petitioner concerning the disclosure of an indictment offense pending in general sessions court. He said that he was retained to represent the Petitioner in case numbers 2012-CR-168, 2012-CR-186, and 2012-CR-214 and that he later agreed to represent him in case number 2013-CR-116.

In case number 2012-CR-168, trial counsel filed a Motion to Sever the two accessory after the fact counts from the two unlawful possession of a weapon counts and a Motion to Dismiss the two unlawful possession of a weapon counts based on the restoration of the Petitioner's rights. Trial counsel filed a Motion to Suppress evidence seized pursuant to a search warrant executed on May 2, 2012, and a Motion to Suppress the Petitioner's statement made the same day. He also filed a Motion to Dismiss the indictment in case number 2012-CR-186. After a hearing, the trial court granted the Motion to Sever in case number 2012-CR-168 and overruled the Motion to Dismiss the indictment in case number 2012-CR-186. Trial counsel stated that his recollection was that the trial court took the two Motions to Suppress under advisement. The trial court asked for additional briefing on the Motion to Dismiss related to the restoration of the Petitioner's rights. Concerning the first Motion to Revoke Bond, trial counsel stated that

he appeared with the Petitioner in Jackson County for a hearing, and the Petitioner was allowed to remain out on the existing bond. He said that the second Motion to Revoke Bond was never heard and was pending when the Petitioner entered his plea.

Trial counsel recalled that the trial court set case number 2012-CR-214, in which the Petitioner was charged with theft of property, for trial on December 3, 2013. Because the pending motions were not related to the theft case, the trial court stated it would rule on those motions after the theft case was resolved. Trial counsel believed that the theft case was the State's strongest case, and he was concerned that the Petitioner might face incarceration in the Department of Correction if convicted. As the trial date neared, trial counsel attempted to negotiate a plea agreement to the theft offense only, but the State would not agree. The State offered a plea agreement on the theft of property offense by which the Petitioner would plead guilty to theft of property valued at more than $1,000 but less than $10,000 and possession of a weapon by a convicted felon, in exchange for an effective ten-year sentence to be served on probation, payment of restitution of $8,500 by March 1, 2014, and dismissal of the remaining counts in all cases in which the Petitioner was represented by trial counsel. On November 25, 2013, the Petitioner, after meeting with trial counsel, agreed to accept that plea offer. Trial counsel notified the State that the Petitioner would accept the offer and plead guilty on the date the theft charge was scheduled for trial—December 3, 2013. Based on their agreement, the State advised trial counsel that it would not fly in its witnesses from Texas for the trial.

Trial counsel testified that his office received two emails from the Petitioner, both addressed to an attorney in his office who had worked on Petitioner's case (co-counsel). During cross-examination, trial counsel read the email sent November 25, 2013:

> [Co-counsel], first of all, I know you are not lead counsel but I feel I can't even talk to [trial counsel] after our last conversation in which he raised his voice and what I thought got pissed off at me in our last meeting. You guys said you did not feel comfortable letting me plead to a gun charge because I was not guilty, and I'm not guilty of any gun charge, but now you guys were going to let me plead to a charge I was not guilty of. This is crazy. I know I told [trial counsel] I would plead but I don't think I will now. [Trial counsel] doesn't realize he works for me. I have asked for several things to be done which never got done and feel as if I would have gotten the same deal as if I had a public defender. I know I owe [trial counsel] five (K) but I asked him to drop me as a client if he wanted to. I no longer can pay the eighty-five hundred on Monday. Somethings came up unforeseen at this point. I really don't care what happens. I have been screwed over by this whole deal all the way around. Now my lawyer has let me plead to something I didn't do. The hell with that. What I want is to plead to the

- 6 -

theft with restitution and then have the Judge hear all the motions on the other charges then go from there. I won't take nothing more than this. I don't care if I do have to sit in jail for a while. They can pay my medical bills.

Trial counsel said that he tried unsuccessfully to contact the Petitioner after receiving the email. On Novemebr 29, 2013, a second email was received. The email, which was read into the record, stated:

I will not be able to make the court date on 12/3/2013. I'm currently in the hospital and will not be released by the 3rd. Please try and re-schedule the court date. I will be having the doctor fax a letter to the clerk if I need to. I don't think you guys know just how sick I am. The reason I don't have the eighty five hundred dollars to pay on the 3rd is because I'm having to pay money for treatment out of pocket, a kinda co-pay thing. I can show you my medical bills thus far. I have paid a total of twenty two thousand five hundred dollars to [trial counsel], and what have I got for it. You have allowed the District Attorney's Office to bully me. You said yourself that they are bullying me around, or bulling me around. You know exactly what these people have done to me and my family. All I ask, if all this had happened to you, what would you. . . do. I have told you the way things work in Smith County. You will not listen to me. I know what works in that county. I have seen it for years and I know that if you put enough pressure on them they will back off. Take everything out of [trial court's] hands and [the District Attorney's hands]. Smith County juries always find you guilty. At the very least you can do for me is do what I ask you to do for me. You are only here to advise me. I've paid you to help me beat this thing, not plead to something I am not guilty of. At this point I feel betrayed and feel as if I have wasted my money. I mean, really, what have you done for me, show up for court a few times, file a couple of motions that never got heard and make some phone calls. I am telling you, no, I refuse to let them beat me and do this to me. You know what they did is wrong. As far as the things that I wanted done that you never got done are; Number 1, ask the Judge to step down; Number 2, file a motion for a change of venue if, if it's granted, good, if not, you tried; 3, ask for my property be returned and the cash taken from me during my interview and the cash taken from my car when it was searched; 4, talk to the media and ask the TBI to look into [a police officer] stealing my money. I will contact you after I get out of the hospital and go from there.

Upon receipt of the second email, trial counsel again attempted unsuccessfully to contact the Petitioner. Trial counsel testified that it is not unusual for clients to second guess themselves about accepting a plea and to waffle on their decision. Even though the emails indicated that the Petitioner was dissatisfied with the plea agreement, trial counsel did not want to contact the assistant district attorney and tell him the Petitioner was not accepting the plea offer and then have the Petitioner show up on December 3 ready to plead guilty. Because he could not reach the Petitioner, trial counsel prepared a motion to withdraw on December 2.

When the Petitioner failed to appear on December 3, trial counsel moved to withdraw. The trial court, without entertaining the motion, reset the matter for December 9 and ordered the Petitioner to bring his medical records to court. Prior to the December 9 hearing, the Petitioner met with trial counsel. After discussing the plea agreement with the Petitioner, trial counsel was able to confirm with the State that the plea offer was still available. The Petitioner stated that he would accept the plea offer and plead on December 9.

Trial counsel denied coercing the Petitioner. He said that he advised the Petitioner that the State had a very strong case concerning the theft, that the Petitioner was concerned about being found guilty of theft, and that the Petitioner did not want to go to trial on the theft charge. Trial counsel agreed that the Petitioner did not want to plead to the unlawful possession of a weapon case, but based on the State's offer, the Petitioner had to "plead to both of them or go to trial on the theft case."

*Post-Conviction Court's Written Order*

The post-conviction court entered a written order in which it summarized the post-conviction hearing testimony and addressed the claims made in the petition for post-conviction relief. Concerning the claim for ineffective assistance of counsel, the post-conviction court found that "[t]he fact [that] the Motion to Revoke Bond was pending was through no fault of [trial counsel]" and "the fact the motion had not already been heard [was] evidence of effective representation by [trial counsel,] not deficient representation." The post-conviction court noted that "the Motion to Withdraw was due to difficulties with [trial counsel] being able to meet, speak with, or locate Petitioner" and that the "problem [] [was] the responsibility of Petitioner, not [trial counsel]." The post-conviction court also noted that the "Petitioner may have been stressed due to the existence of one or both motions, but these stressors are not indicators of a deficient performance on the part of [trial counsel], nor are they much different than the normal stressors present for any criminal defendant facing multiple indictments and significant criminal exposure." The post-conviction court concluded that "[a] review of the guilty plea transcript reflects [that the] Petitioner was advised of each of his constitutional rights

and that he was not promised anything or threatened in order to plea guilty." The post-conviction court also concluded that [trial counsel's] performance was not deficient "in any respect," and therefore, "the first prong of the Strickland test ha[d] not been satisfied[.]" The post-conviction court stated in its order:

> [Trial counsel]'s testimony regarding his negotiations with the State, meetings with other attorneys, difficulty in reaching Petitioner to discuss and prepare for trial, and efforts to protect Petitioner's freedom were all evidence of his more than competent and reasonable representation of Petitioner. The [post-conviction c]ourt finds that [trial counsel]'s testimony throughout the post-conviction hearing to be more honest, believable and reasonable than Petitioner's testimony. [Trial counsel]'s attitude, tone, knowledge of the circumstances surrounding the representation, as well as his overall demeanor, far exceeded those same traits exhibited by Petitioner.

The post-conviction court denied post-conviction relief, and the Petitioner timely appealed.

## II. Analysis

On appeal, the Petitioner presented the following issue:

The Post[-]Conviction Court erred in denying the [Petitioner]'s Post[] Conviction [Petition] where trial counsel's actions constituted threats and coercion and resulted in guilty pleas that were involuntary in violation of the Petitioner's rights to the effective assistance of counsel and due process as guaranteed by the 5th, 6th, and 14th Amendments to the United States Constitution and Article One Sections Eight and Nine of the Tennessee Constitution.

The State argues that the post-conviction court properly denied relief. We agree with the State.

*Standard of Review*

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. Jaco v. State, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). Appellate courts are bound by the post-conviction court's factual findings unless the evidence preponderates against

such findings. <u>Kendrick v. State</u>, 454 S.W.3d 450, 457 (Tenn. 2015). When reviewing the post-conviction court's factual findings, this court does not reweigh the evidence or substitute its own inferences for those drawn by the post-conviction court. <u>Id.</u>; <u>Fields</u>, 40 S.W.3d at 456 (citing <u>Henley v. State</u>, 960 S.W.2d 572, 578 (Tenn. 1997)). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." <u>Fields</u>, 40 S.W.3d at 456 (citing <u>Henley</u>, 960 S.W.2d at 579); <u>see also Kendrick</u>, 454 S.W.3d at 457. The post-conviction court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. <u>Kendrick</u>, 454 S.W.3d at 457.

*Ineffective Assistance of Counsel*

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984); <u>see</u><u>State v. Taylor</u>, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven in order for a court to grant post-conviction relief. <u>Strickland</u>, 466 U.S. at 687; <u>Henley</u>, 960 S.W.2d at 580; <u>Goad v. State</u>, 938 S.W.2d 363, 370 (Tenn. 1996). Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor. <u>Finch v. State</u>, 226 S.W.3d 307, 316 (Tenn. 2007) (citing <u>Carpenter v. State</u>, 126 S.W.3d 879, 886 (Tenn. 2004)). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Strickland</u>, 466 U.S. at 689; <u>see also Henley</u>, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. <u>Granderson v. State</u>, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the <u>Strickland</u> analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." <u>Henley</u>, 960 S.W.2d at 579 (citing <u>Baxter v. Rose</u>, 523 S.W.2d 930, 936 (Tenn. 1975)); <u>see also Goad</u>, 938 S.W.2d at 369. In order to prove that counsel was deficient, a petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." <u>Goad</u>, 938 S.W.2d at 369 (citing <u>Strickland</u>, 466 U.S. at 688); <u>see also Baxter</u>, 523 S.W.2d at 936.

- 10 -

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. Goad, 938 S.W.2d at 370. Therefore, under the second prong of the Strickland analysis, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (quoting Strickland, 466 U.S. at 694) (internal quotation marks omitted).

A substantially similar two-prong standard applies when a petitioner challenges counsel's performance in the context of a guilty plea. Hill v. Lockhart, 474 U.S. 52, 58 (1985); Don Allen Rodgers v. State, No. W2011-00632-CCA-R3-PC, 2012 WL 1478764, at *4 (Tenn. Crim. App. Apr. 26, 2012). First, a petitioner must show that his counsel's performance fell below the objective standards of reasonableness and professional norms. See Hill, 474 U.S. at 58. Second, "in order to satisfy the 'prejudice' requirement, a [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would have not have pleaded guilty and would have insisted on going to trial." Id. at 59.

**Trial counsel's advice to the Petitioner to plead guilty.** The Petitioner claims that trial counsel's representation was deficient in advising him to plead guilty to Class D felony theft of property and unlawful possession of a firearm by a convicted felon. He claims that he was not guilty of these offenses because the theft case was a civil matter and that his "rights were restored" so that he was allowed to possess a firearm.

Trial counsel testified that he advised the Petitioner to plead guilty to the theft of property offense based on the strength of the State's case and that the Petitioner agreed with that advice. The State made its plea offer contingent upon the Petitioner pleading guilty to both theft of property and unlawful possession of a weapon by a convicted felon. As trial counsel explained, it was either go to trial on the theft charge and run the risk of the Petitioner being convicted and sentenced as a career offender to incarceration or accept the plea offer on both offenses and receive concurrent sentences to be served on probation. As our court has stated concerning a defense counsel's advice to a client:

> If the accused is to make "a voluntary and intelligent choice among the alternative courses of action" available to him, counsel must advise the accused, among other things, of the choices that are available to him as well as the probable outcome of these choices. If counsel is convinced that the accused should accept a plea bargain agreement and plead guilty, counsel should recommend that the accused opt for this choice. Counsel may use reasonable persuasion when making the recommendation.

- 11 -

Parham v. State, 885 S.W.2d 375, 384 (Tenn. Crim. App. 1994). Trial counsel did exactly that. He advised the Petitioner of the choices available to him and the risks involved if the Petitioner proceeded to trial on the theft of property offense. The Petitioner has failed to show that trial counsel was ineffective in advising the Petitioner of his choices and risks or in recommending that the Petitioner plead guilty.

**Failure to Argue Pending Motions.** The Petitioner also claims that trial counsel's performance was deficient because trial counsel failed to argue pending motions. The Petitioner asserts he was prejudiced by this deficient representation because if the motions had been ruled on, the rulings "would have have improved [the Petitioner's] position[.]"

Trial counsel testified that he argued certain motions and that the trial court granted one motion and overruled another. Trial counsel testified that the trial court deferred ruling on other motions because they were not related to the theft case that was set for trial. The post-conviction court accredited the testimony of trial counsel. The evidence in the record does not preponderate against the post-conviction court's findings. The Petitioner has failed to prove that trial counsel was deficient in failing to have pending motions ruled on before he entered his plea. He is not entitled to relief on this ground.

*Involuntary Guilty Plea*

Whether a guilty plea is intelligent and voluntary is a mixed question of law and fact. Jaco, 120 S.W.3d at 830-31. Therefore, in such cases we review the post-conviction court's findings of fact *de novo* with a presumption of correctness. Id. The post-conviction court's findings of law are reviewed purely *de novo*. Id.

A guilty plea must be entered knowingly and voluntarily, *i.e.,* the Petitioner must have made the choice to plead guilty after being made aware of the significant consequences of such a plea. State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). When reviewing a guilty plea, this court looks to both the federal standard as announced in the landmark case Boykin v. Alabama, 395 U.S. 238 (1969), and the state standard as announced in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), superseded on other grounds by Tenn. R. Crim. P. 37(b) and Tenn. R. App. P. 3(b). Don Allen Rodgers, 2012 WL 1478764, at *5. Under the federal standard, there must be an affirmative showing that the plea was "intelligent and voluntary." Boykin, 395 U.S. at 242. Likewise, the Tennessee Supreme Court has held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and

knowledgeable, *i.e.*, that he has been made aware of the significant consequences of such a plea . . . ." Mackey, 553 S.W.2d at 340. "[A] plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43). "A practice that is coercive or renders a plea involuntary is one that creates improper pressure that likely would overbear the will of innocent people causing them to plead guilty." Howell v. State, 185 S.W.3d 319, 333-34 (Tenn. 2006). "[W]hether an accused's plea of guilty was voluntarily, understandingly, and knowingly entered is to be determined based upon the totality of the circumstances." State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995).

In order to determine whether a plea is intelligent and voluntary, the trial court must "canvass[] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." Boykin, 395 U.S. at 244. The trial court looks to several factors before accepting a plea, including:

> [T]he relative intelligence of the defendant; degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship, 858 S.W.2d at 904; Howell v. State, 185 S.W.3d 319, 330-31 (Tenn. 2006). Once the trial court has conducted a proper plea colloquy, it discharges its duty to assess the voluntary and intelligent nature of the plea and creates an adequate record for any subsequent review. Boykin, 395 U.S. at 244.

Statements made by the Petitioner, the defense counsel, and the prosecutor during the plea colloquy, as well as any findings made by the trial court in accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Statements made in open court carry a strong presumption of truth, and to overcome such presumption, the Petitioner must present more than "conclusory allegations unsupported by specifics." Id. at 74.

**Motion to withdraw as the Petitioner's counsel.** The Petitioner maintains that trial counsel's threat to withdraw if the Petitioner did not accept the plea offer was coercive and forced him to plead guilty. Trial counsel testified that, eight days before trial, the Petitioner agreed to accept the State's plea offer, and trial counsel notified the State of the Petitioner's acceptance, stating that the Petitioner would enter his guilty plea

- 13 -

on December 3. Later the same day, the Petitioner emailed co-counsel complaining about trial counsel's representation. Trial counsel attempted unsuccessfully to contact the Petitioner to discuss the email and its ramifications. Four days before trial, the Petitioner sent a second email to co-counsel telling him that he was in the hospital and that he would not appear for the trial. Trial counsel again attempted to contact the Petitioner. On the night before trial, trial counsel prepared a motion to withdraw, and on the next morning when the Petitioner failed to appear, trial counsel moved to withdraw. However, without ruling on the motion, the trial court reset the case for a hearing for December 9, 2013. Finally, trial counsel was able to communicate with the Petitioner, and the Petitioner met with trial counsel and again agreed to accept the plea offer. The post-conviction court noted that "the Motion to Withdraw was due to difficulties with [trial counsel] being able to meet, speak with, or locate Petitioner" and that the "problem [] is the responsibility of Petitioner, not [trial counsel]." The post-conviction court found that any stress caused by trial counsel's moving to withdraw was the result of the Petitioner's actions not ineffectiveness on the part of trial counsel.

Based on the Petitioner's apparent reversal of his decision to plead guilty, his statement about not appearing for trial, and trial counsel's inability to contact the Petitioner, trial counsel's filing of a motion to withdraw did not constitute a coercive act that rendered the plea involuntary.

**State's threatening to go forward with the pending Motion to Revoke Bond.** The State filed two Motions to Revoke Bond, both based on the Petitioner's receiving new criminal charges. The post-conviction court found "[t]he fact the Motion to Revoke Bond was pending was through no fault of [trial counsel]" and "the fact the motion had not already been heard is evidence of effective representation by [trial counsel] not deficient representation." The Petitioner failed to appear for a jury trial. Accordingly, the State was well within its rights to go forward with its pending Motion to Revoke Bond if it chose to do so. The post-conviction court noted that the "Petitioner may have been stressed due to the existence of one or both motions, but these stressors are not indicators of a deficient performance on the part of [trial counsel], nor are they much different than the normal stressors present for any criminal defendant facing multiple indictments and significant criminal exposure." The Petitioner has failed to show that the State's conduct was coercive so as to render his plea involuntary.

We further note that the trial court conducted a thorough Tennessee Rule of Criminal Procedure 11(b) colloquy and advised the Petitioner of his constitutional rights. The trial court asked the Petitioner: "Has anybody promised you anything or threatened you to get you to plead guilty?" The Petitioner answered, "No, sir." The trial court then stated: "[The Petitioner], I do believe there's a factual basis for each of your pleas. I think you understand the proceedings. I think you know what you're doing. I think your

pleas are voluntary. I believe you're intelligent, so I'm going to accept them." The trial court also noted that the Petitioner avoided a potentially greater sentence by entering his plea. The post-conviction court concluded that "[a] review of the guilty plea transcript reflects [that the] Petitioner was advised of each of his constitutional rights and that he was not promised anything or threatened in order to plead guilty." Based on the totality of the circumstances, we conclude that trial counsel's motion to withdraw and the State's Motion to Revoke the Petitioner's bond did not create "improper pressure" that "overb[ore] the will of [the Petitioner] causing [him] to plead guilty." See Howell, 185 S.W.3d at 333-34. The Petitioner knowingly and voluntarily entered his guilty pleas, and he is not entitled to relief on this ground.

*Cumulative Error*

The Petitioner argues that the cumulative effect of trial counsel's errors caused him to suffer prejudice. The cumulative error doctrine recognizes that there may be many errors committed in trial proceedings, each of which constitutes mere harmless error in isolation, but have a cumulative effect on the proceedings so great as to require reversal in order to preserve a defendant's right to a fair trial. State v. Hester, 324 S.W.3d 1, 76 (Tenn. 2010). To warrant review under the cumulative error doctrine, however, there must have been more than one actual error during the trial proceedings. Id. at 77. In this case, the Petitioner failed to carry his burden of showing that trial counsel's performance was in any manner deficient. Accordingly, the Petitioner has not established that the cumulative effect of trial counsel's errors resulted in prejudice. The Petitioner's claim is without merit.

## III. Conclusion

The Petitioner has failed to prove that he received ineffective assistance of counsel or that his pleas were involuntarily. We, therefore, affirm the denial of post-conviction relief.

_____
ROBERT L. HOLLOWAY, JR., JUDGE